Constance Hemenway and Dean Riedy, co-administrators of the estate of Jill Riedy, deceased, plaintiffs-appellees, commenced a wrongful death action against the city of Columbus, defendant-appellant, seeking damages for the death of Jill Riedy in a car/pedestrian accident at the intersection of Barnett Road and Livingston Avenue in Columbus, Ohio. Defendant answered, denying liability and asserting various defenses including, as pertinent herein, immunity for the discretionary act of a political subdivision and that the death of Jill Riedy was caused by the sole negligence of the driver who struck and killed her.
After extensive discovery, defendant moved for summary judgment asserting as its basis, that defendant is immune from liability for the wrongful death claim asserted by plaintiffs. The trial court denied the motion for summary judgment. Defendant appeals, asserting that the trial court committed prejudicial error in denying its motion for summary judgment.
On January 4, 1993, defendant received two requests for changes of the traffic controls at the intersection of Livingston Avenue and Barnett Road. Those requests were initiated to protect the visually impaired consisting of at least twenty-five persons who lived near the intersection and needed to cross it on occasion. The requests were that defendant install a buzzer for the Livingston Avenue east crosswalk and that the city implement a northbound "no turn on red" restriction. As will be related hereafter, neither of those changes were implemented when the fatal accident occurred on May 13, 1994. On that date, Jill Riedy, a twenty-four-year-old blind woman, was crossing Livingston Avenue at Barneft Road in a marked crosswalk at 5:25 a.m. She was using a white reflectorized cane to assist her mobility. At that time, an automobile operated by John Frost, travelling westbound on Livingston Avenue, struck Riedy while she was in the intersection and killed her. Frost was found guilty of vehicular homicide.
The appellate review of summary judgment is conducted under a de novo standard. Coventry Twp. v. Ecker (1995), 101 Ohio App.3d 38. Summary judgment is proper only when a party moving for summary judgment demonstrates: (1) there is no genuine issue of material fact; (2) a moving party is entitled to judgment as a matter of law; and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56(C); State ex rel. Grady v.State Emp. Relations Bd. (1997), 78 Ohio St.3d 181.
The issue raised by defendant in its motion for summary judgment is in regard to immunity of a political subdivision as provided by R.C. 2744.03(A)(3), which states as follows:
 "The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee."
In Garland v. Ohio Dept. of Transp. (1990), 48 Ohio St.3d held, in paragraph one of the syllabus, as follows:
 "A governmental entity is immune from tort liability when it makes a decision as to what type of traffic control signal to install at an intersection. * * *"
The Garland case involved the placement of a traffic signal at an intersection by the Ohio Department of Transportation ("ODOT"). In May 1979, a traffic study recommended placement of a traffic signal to replace a flashing light. ODOT first opted to place a two-phase signal at the intersection, but then decided in June 1981, to install a six-phase signal instead. Actual installation began on June 3, 1982, approximately two weeks before Timothy Garland was involved in a fatal truck accident at the intersection.
In Garland, the court held that a governmental entity is immune from tort liability when it is in the process of determining what type of traffic signal to install at an intersection. In addition, the court extended immunity beyond that time and gave government entities a "reasonable amount" of time to implement the final decision before incurring tort liability. (Paragraph two of the syllabus.)
In this case, the request for an audible pedestrian device was made on January 3, 1993. As stated before, the decision to install or not to install the device is discretionary. The study admits that it decided to install an audible pedestrian device on January 14, 1994. Actually construing all inferences most favorably to plaintiffs, a reasonable inference can be reached that the decision was actually made on October 17, 1993, when a work order was prepared for implementation. Steve Jewel testified that, in his twelve years as traffic engineer with the city of Columbus, he had never known of an instance where a reply to an investigation request was prepared before a decision was made on that request. In any event, followingGarland, at the time the decision was made, either in October 1993 or January 14, 1994, there was discretion to decide the type of device to be installed (if the type had not already been selected).
The city claims that during the period between January 1994 and August 1994, they tried to locate an improved device and that the decision as to the type of device to install was not made until August 26, 1994, more than three months after the fatal accident. Installation of the device took place on October 3, 1994.
The issue is whether there is a genuine issue of fact about whether the city selected the type of audible tone device on January 14, 1994, or whether it was not until August 1994, that the type of device to be installed was selected. A January 14, 1994 letter sent from Steve Jewel to Tony Diblasi, the person who requested the device, reads as follows:
 "* * * We are placing an order for a new type of audible signal. The Division will issue a work order to install audible signals for blind pedestrians crossing the east leg of the intersection once our order has arrived. * * *"
This letter is sufficient to raise a genuine issue of fact about whether it was in January 1994, that the type of device was selected or whether the city continued to conduct an ongoing investigation to determine the type of device to install. The record indicates that the search was, at best, sporadic and inferentially not specifically directed to the intersection in question. Further, although not conclusive, evidence that the type had been selected previously is that the device actually installed at the intersection was one previously used by the city. Construing all inferences most favorable to the nonmoving party (plaintiffs), there is a reasonable question of fact about when the selection of type of device was made.
If it is found that the type of device was determined on January 14, 1994, there would still be a reasonable time to install the device. What constitutes a reasonable time depends upon the difficulties inherit in a political subdivision securing and installing a device. These factors would include whether funding must be obtained for the device and the difficulty and time consumed in the installation. In this case, no funding was required because the device would come from the department's ongoing budget. The device actually installed was in stock as of June 16, 1993, and the installation was "in house" and would take less than a day. Considering these relevant factors, there is a genuine issue of fact as to whether time from January 14, 1994 until the date of the accident of May 13, 1994, a period of about four months, was a reasonable time for installation of the device. If it were not a reasonable time, the immunity granted to the city pursuant to R.C. Chapter 2744 would no longer be available.
The second request, was to take the light controlling traffic at Livingston Avenue and Barnett Road off night flash (flashing yellow). That decision was made on January 25, 1994. The city had not removed the signal from night flash at the time of the fatal accident on May 13, 1994, a period of almost four months. Once again, the city had reasonable time to implement the change it had decided to make during which time it would still have immunity. Steve Jewel explained the four-month delay, by stating that he did not know why the delay occurred, that it fell through the cracks." In some instances, a four-month delay in implementing a decision may be reasonable; however, under the circumstances of this case, the time delay could be found to be unreasonable. Jewel testified that the change was made through the city's computer system and that the change could take anywhere from ten minutes to an hour. Even allowing time to process the requested change and to schedule the time in a city employee's schedule, a reasonable trier of the fact could find that the four months was beyond a reasonable time for such a relatively simple change.
Finally, defendant argues that the time taken to make the change was reasonable since the city had no notice of a dangerous condition. This argument is reputed by the evidence that the city was aware that at least twenty-five visually impaired persons may be using the intersection and potentially exposed to dangers that far exceed those faced by most pedestrians.
Defendant's assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT and TYACK, JJ., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.